ATC PARTNERSHIP *v.* TOWN OF WINDHAM ET AL.
(SC 16173)

Borden, Katz, Palmer, Sullivan and Peters, Js.

Argued November 2—officially released December 14, 1999

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom, on the brief, was *Michael J. Rose*, for the appellees (named defendant et al.).

*Richard S. Cody*, with whom were *Lisa Silvestri* and, on the brief, *Ana Navarro*, for the appellees (defendant Northeast Connecticut Economic Alliance, Inc., et al.).

*Opinion*

PETERS, J. This case concerns the extent to which constitutional principles of substantive due process,

under the federal constitution or under our state constitution, permit a property owner to pursue an action for damages premised on a claim of intentional abuse of a municipality's power of eminent domain. The plaintiff property owner claims that it is entitled to recover for the wilful, arbitrary and capricious seizure and condemnation of its property, in furtherance of a municipality's intent to usurp an opportunity for economic development of the property. The question before us is whether such a claim states a viable cause of action either under 42 U.S.C. § 1983 (§ 1983),[1] or under state constitutional law as articulated in *Binette* v. *Sabo*, 244 Conn. 23, 710 A.2d 688 (1998). We conclude that it does not and, accordingly, we affirm the judgment of the trial court.

The plaintiff, ATC Partnership, filed a two count third amended revised complaint (complaint), alleging that the defendants, the town of Windham and the Northeast Ct. Economic Alliance, Inc.,[2] had violated the plaintiff's right to substantive due process in the course of seizing and condemning certain real and personal property

[1] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

[2] The complaint also names as defendants certain officials and agents of both the town of Windham and the Northeast Ct. Economic Alliance, Inc.: Walter Pawelkiewicz, Windham's first selectman; George Barton, Hanna Clements, Joseph Marsalisi, John McGrath, Jr., Yolanda Negron, Charlotte Patros, C. Lawrence Schiller, Sam Shifrin, Sebastian Ternullo and Thomas White, Windham's other selectmen; Geri Langlois, Gail Mellow, Giacomo Guarnaccia, Betti Kuszaj, Timothy McNally, Robert Miller, Dimitrios Pachis, James Weiss and Donald Williams, the officers and directors of the Northeast Connecticut Economic Alliance, Inc.; Linda Theriault, Windham's tax collector; Milton King, Windham's chief of police; and Paul DeCadi, a Windham police lieutenant. For the sake of simplicity, we will follow the practice of the parties and refer throughout this opinion to the town of Windham and the Northeast Ct. Economic Alliance, Inc., as the defendants.

owned by the plaintiff. The first count of the complaint claimed a violation of § 1983, and the second count claimed a violation of the plaintiff's rights under the state constitution. The trial court, *Beach, J.,* granted the defendants' motion to strike both counts of the plaintiff's complaint. Thereafter, the trial court granted the plaintiff's motion for judgment, and subsequently rendered judgment in favor of the defendants. The plaintiff appealed from that judgment to the Appellate Court, and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The plaintiff's complaint contains the following factual allegations in support of its claim that the defendants had engaged in conduct that constituted a "gross abuse of governmental power . . . for purposes of oppression . . . which ha[s] deprived the plaintiff of its substantive constitutional right to due process of law." The plaintiff was the owner of the American Thread Complex (complex), a piece of real property located in Windham. The complex premises also housed extensive personal property belonging to the plaintiff. On or about August 12, 1994, the defendants acted to condemn the complex, for the purpose of an ongoing economic redevelopment in northeastern Connecticut.[3]

Prior to the condemnation, the plaintiff and the defendants had engaged in extensive, lengthy and unsuccessful negotiations for the sale of the complex to the defendants for the aforementioned economic redevelopment. The plaintiff alleged that, although it had "engaged at all times in good faith negotiations," the defendants had "plotted, planned and conspired to usurp the economic development of said project as well as the personal property located therein and to confiscate same by whatever means were expedient to

---

[3] The condemnation is the subject of a separate action currently pending in the Superior Court in the judicial district of Windham. *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, Superior Court, judicial district of Windham at Putnam, Docket No. 94-0049248-S.

accomplish said purpose." As evidence of this alleged conspiracy, and of the defendants' bad faith, the plaintiff claimed that, at the end of the negotiations between it and the defendants, agents of the defendants had given the plaintiff an ultimatum: either accept $250,000 as a full and final settlement on all claims to the complex and any personal property located therein, or the defendants would condemn the property and award the plaintiff the token sum of $1.

The plaintiff further alleged that, in order to exert pressure on it to accept the defendants' terms, the defendants had ordered the Windham tax collector, the defendant Linda Theriault, to levy an improper alias tax warrant on the personal property contained in the complex. The plaintiff also claimed that the defendants, prior to the condemnation, unlawfully had ordered officers of the Windham police department to prevent the plaintiff from exercising control over, and gaining access to, the complex and the personal property therein.

The record reveals the following additional relevant facts. On March 15, 1995, following the condemnation of its property, the plaintiff commenced this action against the defendants for damages pursuant to § 1983. In its initial complaint, the plaintiff claimed only that the defendants had condemned its property without just compensation.[4] The trial court, *Silbert, J.,* struck the plaintiff's initial complaint on the grounds that the plaintiff had not yet exhausted its available state remedies, and that, therefore, the plaintiff's claim was not ripe for adjudication. The plaintiff subsequently filed an amended revised complaint and a second amended revised complaint. Thereafter, the trial court, *Dunnell, J.,* struck the plaintiff's second amended revised complaint for essentially the same reasons that the initial

---

[4] Unlike the third amended revised complaint, the plaintiff's initial complaint did not contain a claim for damages under the state constitution.

complaint had been struck. Thereafter, the plaintiff filed the complaint that is the subject of this appeal.

In striking the plaintiff's complaint, the trial court, *Beach, J.,* began by noting the similarity between the plaintiff's current complaint, and the two previously stricken complaints. As justification for striking the plaintiff's claim under § 1983, the court, relying on the United States Supreme Court's decision in *Williamson County Regional Planning Commission* v. *Hamilton Bank of Johnson City,* 473 U.S. 172, 195, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), concluded that the plaintiff's claim was premature because the plaintiff had not yet exhausted all of its available state remedies. In conjunction with that determination, the court noted the line of United States Supreme Court cases that have held that "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (Internal quotation marks omitted.) Finally, the court noted its reluctance to "[expand] the concept of substantive due process, at least partly because it is a generally subjective standard that, at least at the stage of allegations, could run the gamut of tort law."

Turning to the plaintiff's claim under the state constitution, the court concluded that our decision in *Kelley Property Development, Inc.* v. *Lebanon,* 226 Conn. 314, 627 A.2d 909 (1993), was controlling, and that under the holding of that case, there "was no . . . cause of action, partly because there already existed means of redress which may afford some, even if not all, of the relief sought." The court acknowledged that our decision in *Binette* v. *Sabo,* supra, 244 Conn. 23, had, for some circumstances, created a private cause of action

for violations of article first, §§ 7 and 9, of the Connecticut constitution, but concluded that this case was governed by *Kelley Property Development, Inc.*, rather than by *Binette*.

On appeal to this court, the plaintiff claims that the trial court, *Beach, J.*, improperly struck its complaint. Specifically, the plaintiff contends that the trial court improperly concluded that the alleged conduct of the defendants did not give rise to a valid claim for damages either under § 1983 or under the state constitution. We affirm the judgment of the trial court in both respects.

## I

## STANDARD OF REVIEW

As an initial matter, we set forth the standard of review by which we judge the plaintiff's appeal. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the defendants' motions is plenary. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232–33, 680 A.2d 127 (1996)." *Knight* v. *F. L. Roberts & Co.*, 241 Conn. 466, 470, 696 A.2d 1249 (1997). "In an appeal from the granting of a motion to strike, we must read the allegations of the complaint generously to sustain its viability, if possible; *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 68, 700 A.2d 655 (1997) . . . ." *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 18, 738 A.2d 623 (1999). We must, therefore, "take the facts to be those alleged in the complaint that has been stricken and . . . construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Bohan* v. *Last*, 236 Conn. 670, 674, 674 A.2d 839 (1996); *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 696, 694 A.2d 788 (1997); *Waters* v. *Autuori*, 236 Conn. 820, 825, 676 A.2d 357 (1996)." (Internal quotation marks omitted.) *Jacoby* v.

*Brinckerhoff,* 250 Conn. 86, 89, 735 A.2d 347 (1999). Even under this deferential standard, however, neither of the plaintiff's claims may be sustained.

## II

## SECTION 1983 CLAIM

In the first count, the plaintiff alleged that the defendants' conduct in seizing and condemning the plaintiff's real and personal property was so arbitrary and capricious that it rises to the level of a violation of the plaintiff's federal constitutional right to substantive due process, and therefore supports an action for damages under § 1983. See footnote 1 of this opinion. We agree with the trial court that the plaintiff has not stated a legally viable claim as a matter of federal law.

Section 1983 permits a federal cause of action to be brought against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] . . . ." To state a valid claim under § 1983, a plaintiff must establish: "(1) [that] the conduct complained of was committed by a person acting under color of state law; and (2) [that] this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt* v. *Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981).[5]

---

[5] Although § 1983 speaks of *persons* being "[deprived] of . . . rights, privileges, or immunities secured by the Constitution and laws," of the United States, it is well established that nonhuman legal entities, such as partnerships and corporations, have standing to assert a claim under § 1983. See *Golden State Transit Corp.* v. *Los Angeles,* 493 U.S. 103, 105, 110 S. Ct. 44, 107 L. Ed. 2d 420 (1989) (taxicab franchise); *Des Vergnes* v. *Seekonk Water District,* 601 F.2d 9, 16 (1st Cir. 1979) (corporations); *Gordon* v. *Cartersville,* 522 F. Sup. 753, 758 (N.D. Ga. 1981) (partnerships).

The United States Supreme Court has recently reiterated that "in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated." *County of Sacramento* v. *Lewis*, 523 U.S. 833, 841 n.5, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). In this case, the deprivation alleged by the plaintiff is an impairment of its right to substantive due process, as guaranteed by the fourteenth amendment to the United States constitution.[6] In order, therefore, to determine the propriety of the trial court's striking of the plaintiff's § 1983 claim, we must examine the contours of the federal constitutional right[7] to substantive due process.

It is axiomatic that the due process clause not only guarantees fair procedures in any governmental deprivation of "life, liberty, or property," but also encompasses "a substantive sphere . . . barring certain government actions regardless of the fairness of the procedures used to implement them . . . ." (Citations omitted; internal quotation marks omitted.) Id., 840. This basic protection embodies the democratic principle that "the good sense of mankind has at last settled down to this: that [due process was] intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." (Internal

---

[6] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ." As with claims under § 1983, nonhuman legal entities are persons within the meaning of the due process clause. *Grosjean* v. *American Press Co.*, 297 U.S. 233, 244, 56 S. Ct. 444, 80 L. Ed. 660 (1936).

[7] It is well settled that a claim under § 1983 must be based on an alleged violation of a *federal* constitutional or statutory right. *Gomez* v. *Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980); see *California* v. *LaRue*, 409 U.S. 109, 110 n.1, 93 S. Ct. 390, 34 L. Ed. 2d 342 (1972). Therefore, the plaintiff's claim of a violation of its *state* constitutional right to substantive due process, as a matter of law, cannot form the basis for its suit under § 1983. We discuss the plaintiff's claim under the state constitution in part III of this opinion.

quotation marks omitted.) Id., 845, quoting *Bank of Columbia* v. *Okely*, 17 U.S. (4 Wheat.) 122, 126, 4 L. Ed. 559 (1819).

Despite the important role of substantive due process in securing our fundamental liberties, that guarantee "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *County of Sacramento* v. *Lewis*, supra, 523 U.S. 848. Rather, substantive due process has been held to protect against only the most arbitrary and conscience shocking governmental intrusions into the personal realm that "our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society." (Internal quotation marks omitted.) *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, 505 U.S. 833, 850, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). Thus, substantive due process has been held to safeguard such intimate activities as marriage; *Loving* v. *Virginia*, 388 U.S. 1, 12, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967); contraception; *Griswold* v. *Connecticut*, 381 U.S. 479, 481–82, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965); education of children; *Meyer* v. *Nebraska*, 262 U.S. 390, 399–403, 43 S. Ct. 625, 67 L. Ed. 1042 (1923); and bodily integrity. *Rochin* v. *California*, 342 U.S. 165, 171–72, 72 S. Ct. 205, 96 L. Ed. 183 (1952).

The plaintiff argues that the allegedly abusive conduct of the defendants in seizing and condemning its property falls into that protected realm as well. That argument is unpersuasive because it ignores two basic tenets of substantive due process jurisprudence. First, the governmental conduct at issue does not violate substantive due process unless it "shocks the conscience"; *County of Sacramento* v. *Lewis*, supra, 523 U.S. 846; and egregiously transcends the "decencies of civilized conduct." *Rochin* v. *California*, supra, 342 U.S. 173. The alleged actions of the defendants in this case fall

far short of meeting that exacting standard. Second, as the United States Supreme Court repeatedly has held, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (Internal quotation marks omitted.) *Albright* v. *Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). Because both the fourth and fifth amendments to the United States constitution provide explicit protection against the arbitrary seizure and condemnation of private property,[8] the plaintiff is precluded from redress under "the more generalized notion of substantive due process . . . ." (Internal quotation marks omitted.) Id. We discuss, in turn, each of these strands of the federal law of substantive due process.

## A

The plaintiff claims that the alleged actions of the defendants were so arbitrary and oppressive that they violated its right to substantive due process. Even viewing the allegations contained in the plaintiff's complaint in a light most favorable to sustaining its validity, as we are bound to do considering the procedural posture of the case; *Cotto* v. *United Technologies Corp.*, supra, 251 Conn. 18; we find that the conduct of which the plaintiff complains does not meet the mandated constitutional standard of the kind of misuse of governmental authority that is encompassed within cognizable claims of the denial of substantive due process.

---

[8] The fourth amendment to the United States constitution provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

The fifth amendment to the United States constitution provides in relevant part: "[N]or shall private property be taken for public use, without just compensation."

Substantive due process is the embodiment of society's desire to "prevent government from abusing [its] power, or employing it as an instrument of oppression." (Internal quotation marks omitted.) *Collins* v. *Harker Heights*, 503 U.S. 115, 126, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992). To that end, a claim of a violation of substantive due process must allege a "level of executive abuse of power . . . which shocks the conscience." *County of Sacramento* v. *Lewis*, supra, 523 U.S. 846. A salient example of such abuse of power may be found in the very case in which the standard was first enunciated. In *Rochin* v. *California*, supra, 342 U.S. 172, the United States Supreme Court held that the forced pumping of a suspect's stomach to retrieve evidence "shocked the conscience." As the court described it, "[i]llegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation." Id.

The court's recent decision in *County of Sacramento* v. *Lewis*, supra, 523 U.S. 833, further illustrates the extremity of government abuse that must be alleged in order to sustain a substantive due process claim. In that case, reckless indifference by a police officer during a high-speed chase resulted in the death of the appellees' decedent. In sustaining the trial court's grant of summary judgment in favor of the county of Sacramento, the United States Supreme Court held that "[r]egardless [of] whether [the police officer's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983." Id., 855.

The facts alleged in, and fairly provable under, the plaintiff's complaint in this case similarly fail to meet the standard for a violation of substantive due process. The plaintiff's claims of government abuse are three-fold, namely, that: (1) the defendants engaged in deliberately bad faith negotiations for the sale of the complex; (2) the defendants induced the town tax collector to issue an improper alias tax warrant in order to exert pressure on the plaintiff; and (3) the defendants ordered the Windham police to deny the plaintiff access to the complex prior to the actual condemnation. As in the *County of Sacramento* case, these actions may form the basis for other valid legal claims. Indeed, the plaintiff has filed three other lawsuits[9] in order to obtain redress for its claimed injuries. The actions of the defendants as alleged in this case are, however, a far cry from the stomach pumping of *Rochin*, or the attempted regulation of personal decisions regarding marriage or contraception of *Loving* and *Griswold*. Similarly, the plaintiff's allegations do not resemble the type of oppressive governmental conduct that resulted in a death in the *County of Sacramento* case, and yet was held by the United States Supreme Court not to be actionable as a violation of substantive due process. In our view, the type of economic harm alleged in the plaintiff's complaint fails to rise to the conscience shocking level that the United States Supreme Court has set as the standard for violations of substantive due process.[10]

---

[9] The plaintiff has filed separate actions over the condemnation; *Northeast Connecticut Economic Alliance, Inc.* v. *ATC Partnership*, Superior Court, judicial district of Windham at Putnam, Docket No. 94-0049248-S; for conversion and replevin; *ATC Partnership* v. *Windham*, Superior Court, judicial district of Windham at Putnam, Docket No. 95-0049838-S; and over the improper tax liens. *Windham* v. *ATC Partnership*, Superior Court, judicial district of Windham at Putnam, Docket No. 96-0054331-S.

[10] The plaintiff's reliance on, inter alia, the Ninth Circuit Court of Appeals' decision in *Sinaloa Lake Owners Assn.* v. *Simi Valley*, 882 F.2d 1398 (9th Cir. 1989), cert. denied, 494 U.S. 1016, 110 S. Ct. 1317, 108 L. Ed. 2d 493 (1990), is misplaced. Although the opinion in that case supports the plaintiff's

## B

The plaintiff further argues that the trial court improperly concluded that the existence of an explicit source of constitutional protection against the type of government abuse alleged in this case forecloses the plaintiff's substantive due process claim. We disagree with the plaintiff.[11]

In *Graham* v. *Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989), the United States Supreme Court first held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Although this rule has been the subject of some scholarly criticism,[12] the court has reaffirmed it three times since it decided *Graham*. See *County of Sacramento* v. *Lewis*, supra, 523 U.S. 842; *United States* v. *Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997); *Albright* v. *Oliver*, supra, 510 U.S. 273. The *Graham* doctrine,

claim, it was overruled by the Ninth Circuit in *Armendariz* v. *Penman*, 75 F.3d 1311, 1326 (9th Cir. 1996), and, therefore, affords the plaintiff no assistance.

[11] The plaintiff claims, as a threshold matter, that we should decline to review this issue because it "amounts to an alternative ground upon which to affirm the judgment of the trial court . . . [that] was never raised in the trial court [and for which] the . . . defendants failed to file a preliminary statement of the issues . . . ." A careful review of the record reveals, however, that the trial court did, in fact, in part base its decision on the existence of "an explicit textual source of constitutional protection against a particular sort of government behavior," namely, the takings clause. Because our review of the legal questions presented by a motion to strike is plenary; *Knight* v. *F. L. Roberts & Co.*, supra, 241 Conn. 470; the trial court's reliance on this concept properly is before this court regardless of the defendants' failure to file a preliminary statement of issues.

[12] See, e.g., T. Massaro, "Reviving Hugo Black? The Court's 'Jot for Jot' Account of Substantive Due Process," 73 N.Y.U. L. Rev. 1086 (1998) (arguing that *Graham* rule erodes substantive due process protections).

which is premised on the court's " 'reluctan[ce] to expand the concept of substantive due process' "; *County of Sacramento* v. *Lewis*, supra, 842; is designed to ensure that "claim[s] [are] analyzed under the standard appropriate to that specific [constitutional] provision, not under the rubric of substantive due process." *United States* v. *Lanier*, supra, 272 n.7.[13]

In the present case, two specific constitutional provisions, the fourth and fifth amendments; see footnote 8 of this opinion; provide "explicit textual source[s] of constitutional protection" against the type of governmental misconduct alleged in the plaintiff's complaint. *Graham* v. *Connor*, supra, 490 U.S. 395. If the defendants' seizure of the plaintiff's property prior to condemnation was illegal, then it may be actionable under the fourth amendment; if the condemnation itself was improper, then it may be actionable under the takings clause. In any event, the facts of this case do not warrant our departure from the analytical framework set forth by the United States Supreme Court in *Graham*.[14]

---

[13] The plaintiff's reliance on *United States* v. *James Daniel Good Real Property*, 510 U.S. 43, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993), and *Soldal* v. *Cook County*, 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992), is misplaced. The former case involved procedural, rather than substantive, due process and hence is inapposite. *United States* v. *James Daniel Good Real Property*, supra, 48–52. In the latter case, the court merely held that the fourth amendment, and not the takings clause, was the proper source of explicit textual protection against the governmental wrong alleged by the plaintiffs. *Soldal* v. *Cook County*, supra, 61. Contrary to the plaintiff's argument, neither case holds that if an explicit constitutional provision is implicated by supposed government misconduct, a court nevertheless should analyze the misconduct through the lens of substantive due process.

[14] Similarly unavailing is the plaintiff's attempt to distinguish *County of Sacramento* v. *Lewis*, supra, 523 U.S. 833. Contrary to the plaintiff's contention that *County of Sacramento* departs from the *Graham* rule, the court in that case reached the substantive due process issue *only* because "[t]he Fourth Amendment covers only searches and seizures, neither of which took place here." (Internal quotation marks omitted.) Id., 843. By contrast, there is no question that the property at issue in this case was "seized" within the meaning of the fourth amendment.

## C

In sum, not only is the government misconduct complained of hardly conscience shocking in a constitutional sense, but that misconduct has remedies grounded in two other explicit federal constitutional provisions. We, therefore, decline the plaintiff's invitation to recharacterize the alleged facts of this case as probative of a cognizable violation of a right to substantive due process. In so doing, we affirm the wisdom of the United States Supreme Court's warning against employing "[o]ur Constitution . . . to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels* v. *Williams*, 474 U.S. 327, 332, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). The guarantee of substantive due process is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul* v. *Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). In light of these considerations, we conclude that the trial court properly struck the plaintiff's § 1983 claim.

## III

## STATE CONSTITUTIONAL CLAIM

The plaintiff's alternate contention is that, even if federal law provides it no remedy, it has stated a valid claim under the state constitution. Although the plaintiff does not challenge directly the constitutional validity of the taking of its property through condemnation, it alleges that the conduct of the defendants, in anticipation of that taking, was so egregious that the defendants are liable for damages for their violation of the plaintiff's substantive due process rights under article first, § 8, of our state constitution.[15]

---

[15] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

The issue before us is framed by the two cases in which we have considered the viability of a constitutional tort claim under the state constitution. The plaintiff argues that its pleadings fall within the allegations sustained in *Binette* v. *Sabo*, supra, 244 Conn. 23, in which we recognized the validity of such a state constitutional claim under article first, §§ 7 and 9, of our state constitution in the context of allegations of an egregiously unreasonable search and seizure.[16] The defendants argue, to the contrary, that the plaintiff's claim for relief is precluded by *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 314, in which we declined to recognize such a claim under article first, § 8, in the context of allegations of an intentional and arbitrary misuse of zoning authority to obstruct a real estate development project. The trial court held that *Kelley Property Development, Inc.*, was the controlling precedent under the circumstances of this case. We agree.

In *Binette*, we declined to create an all-encompassing damages action for any and all alleged violations of state constitutional provisions. We held, instead, that whether such a cause of action should be recognized would be determined on a case-by-case basis. *Binette* v. *Sabo*, supra, 244 Conn. 48. Accordingly, we identified the factors to be considered as including the following: "the nature of the constitutional provision at issue; the nature of the purported unconstitutional conduct; the nature of the harm; separation of powers considerations and the other factors articulated in *Bivens* [v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 390–97, 91 S. Ct. 1999, 29 L. Ed. 2d

---

[16] We analogized the constitutional tort action that we were recognizing to that described by the United States Supreme Court in *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 390–97, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). *Binette* v. *Sabo*, supra, 244 Conn. 45–48.

619 (1971)] and its progeny; the concerns expressed in *Kelley Property Development, Inc.*; and any other pertinent factors brought to light by future litigation." *Binette* v. *Sabo*, supra, 48. Among the relevant concerns expressed in *Kelley Property Development, Inc.*, was the undesirable prospect of conflict between statutorily provided administrative remedies and judicially created tort remedies arising out of the same controversy. *Kelley Property Development, Inc.* v. *Lebanon*, supra, 226 Conn. 339–40.

The plaintiff advances three reasons in support of its claim that its cause of action should be governed by *Binette* and not by *Kelley Property Development, Inc.* First, the plaintiff contends that, because it has alleged an excessive use of force by police officials, the conduct at issue resembles that alleged in *Binette*. Second, it maintains that existing statutory remedies for condemnation and common-law remedies for replevin or conversion are constitutionally deficient because such remedies provide no relief for the allegedly malicious and abusive manner in which the defendants exercised their authority. Third, it asserts that the police officers and elected officials who are the defendants in this case should be held to a higher constitutional standard of conduct than the standard applied to the *Kelley Property Development, Inc.*, defendants, who were local volunteer members of a planning and zoning commission. We are not persuaded by any of these arguments.

With respect to the nature of the police conduct at issue, the plaintiff's complaint alleges that police officials intimidated it from exercising its lawful rights over both its personal and real property. Unlike the allegations in *Binette*, however, the allegations in the plaintiff's complaint do not assert that there was any physical confrontation between it and the police, or that the

police, without a warrant, entered into a private home.[17] The plaintiff's complaint does not purport to state any claim for an unconstitutional search and seizure under article first, §§ 7 and 9, of the state constitution. All that the plaintiff alleges is that, pursuant to an alias tax warrant for delinquent property taxes, the validity of which the plaintiff disputes, the defendants posted police officials at the plaintiff's business complex in order to preclude the plaintiff from having access to its property. That allegation is a far cry from the alleged egregious police misconduct that we held to be actionable in *Binette*. A municipality is not subject to constitutional reproach for a violation of the right to substantive due process simply because a taxpayer disputes the validity of the municipality's recourse to statutorily authorized mechanisms for the collection of local taxes.

With respect to the availability of alternate remedies, the plaintiff contends that existing statutory and common-law remedies do not provide adequate constitutional protection for the impairment of its right to substantive due process that arises from the wilful and intentional abuse of governmental authority to condemn property for public purposes. Specifically, the plaintiff contends that nonconstitutional remedies do not provide it relief from the defendants' bad faith negotiations that, according to the plaintiff's allegations, were intended to coerce the plaintiff into selling its property to the defendants at a fraction of its value. This contention is, however, indistinguishable from that which we found insufficient to warrant constitutional protection in *Kelley Property Development, Inc.* There,

---

[17] The plaintiffs in *Binette* alleged that police officers of the city of Torrington had entered the plaintiffs' home without a warrant, unlawfully had threatened one of the plaintiffs with arrest and imprisonment, and had subjected both of the plaintiffs to repeated physical abuse during the course of effecting their arrest. *Binette* v. *Sabo*, supra, 244 Conn. 26.

too, as the dissenting opinion of Justice Borden highlighted, the plaintiff alleged that the defendants intentionally, knowingly and arbitrarily had abused their governmental authority to impair the plaintiff's ability to make proper economic use of its property. *Kelley Property Development, Inc.* v. *Lebanon,* supra, 226 Conn. 346–47. In accordance with *Kelley Property Development, Inc.,* the plaintiff's contention cannot be sustained in this case.

Finally, the plaintiff urges us to hold that, because the defendants are police officials and elected public officers, they should be held to a higher standard of constitutional accountability for alleged impairment of the plaintiff's right to substantive due process than we held to be appropriate for the citizen planning and zoning commission members who were the defendants in *Kelley Property Development, Inc.* Although the defendants' status as volunteers was a relevant factor in that case, it was not dispositive there. Similarly, the governmental status of the defendants is not dispositive in the present case.

At the end of the day, the single most important consideration in this case is that the plaintiff's substantive due process claim is premised entirely on alleged harm to its economic interests in the development of real and personal property. Federal case law has not extended a *Bivens* remedy for such a claim.[18] Under the circumstances, the remedies that are afforded to the plaintiff by the constitutional and statutory law of condemnation, the constitutional law of search and seizure and the common law of replevin and conversion are sufficiently compensatory to obviate the need for

[18] The plaintiff again relies on *United States* v. *James Daniel Good Real Property,* 510 U.S. 43, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993). As discussed previously; see footnote 13 of this opinion; that case is inapposite because it addresses a claim of procedural due process, rather than of substantive due process.

judicial recognition of a freestanding tort claim under article first, § 8, of our state constitution.

## IV

## CONCLUSION

We conclude that the trial court properly determined that the allegations contained in the plaintiff's third amended revised complaint are insufficient to state a cause of action either under § 1983 or under the due process clause of the Connecticut constitution. Our decision does not leave the plaintiff remediless. It remains free to pursue other avenues for relief that are better suited for its claim of improprieties in the seizure and condemnation of its property.

The judgment is affirmed.

In this opinion the other justices concurred.

