[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, ATC Partnership(ATC), has brought this replevin action in which it seeks to recover certain property that was seized by the tax collector of the defendant town pursuant to an alias tax warrant levied in May of 1994 for the collection of delinquent real estate taxes from ATC upon a parcel of land that it had owned since 1987 and which had been previously owned and operated until 1985 by the American Thread Company as a textile mill in the Willimantic section of the town of Windham. The property sought to be replevied consisted of machinery and equipment that was housed on the forty acre American Thread Company mill complex just prior to its being condemned on September 9, 1994, by the defendant, Northeast Economic Alliance, Inc. (Northeast), acting as the statutory implementing and condemning authority, "for the purpose of an ongoing economic redevelopment in northeastern Connecticut." See ATC Partnershipv. Windham, 251 Conn. 597, 600 (1999); see also Northeast EconomicAlliance, Inc. v. ATC Partnership, Superior Court, judicial district of Windham at Putnam, Docket No. 94-0049248-S (April 16. 1998) (21 Conn.L.Rptr. 635); id., 1999 Conn. Super. LEXIS 3314 (September 14, 1999).
Prior to the filing of the plaintiff's complaint in the replevin action on December 19, 1994, the town had commenced an action for injunctive relief against ATC on May 19, 1994, in which it alleged that although the parties had agreed to cooperate in order to obtain financial assistance from the state for the rehabilitation and redevelopment of the American Thread mill complex, ATC had "breached the agreement by removing and continuing to remove valuable and historic property from the Complex."Town of Windham v. ATC Partnership, Superior Court, judicial district of Windham at Putnam, Docket No. 94-0048597-S. The town's first selectman, CT Page 12127 Walter Pawelkiewicz, stated in the affidavit attached to the complaint that two lump sum tax payments were made by ATC in the spring of 1993, but that although an arrangement for monthly payments of $15,000 had been made, no additional payments were made thereafter, and that ATC's total tax liability at the time of $251,755.82 was a "tremendous burden" on the town administration and the taxpayers of what he described as one of the most economically distressed communities in the state.
The court file in the above-captioned case also contains a letter dated May 19, 1994, from counsel for ATC to the town's attorney which stated that "I have indicated to you that contrary to the allegations of the complaint, my clients have not removed anything from the premises and have no immediate plans to do so [and therefore] I have agreed, without court order, that my clients agree not to remove any contents until there is a hearing in regard to this matter." It should also be noted that although a court hearing was apparently scheduled for October 6, 1994, the action was withdrawn by the town on September 29, 1994.
The original complaint alleged only that the defendants interfered with the plaintiff's right to immediate possession of the property, that they sought to prevent its removal from the real estate, and that the defendants' retention of the listed items of equipment and machinery constituted conversion. The defendants moved to strike the complaint on the ground that one of the essential elements of a cause of action for replevin under General Statutes § 52-515, namely, the wrongful detention of the property, had not been pleaded, and the court (Sferrazza, J.), upon granting the defendants' motion, held that "both
the right to immediate possession and unlawful detention [are] prerequisites to establish a valid replevin action [and that nowhere in the] complaint does the plaintiff state that the detention is wrongful, nor does the complaint set forth factual allegations supporting an inference of wrongfulness." 15 Conn.L.Rptr. 270 (September 19, 1995).
The amended revised complaint dated September 22, 1995, which was filed in response to Judge Sferrazza's decision, alleges that "[t]he defendants are wrongfully detaining plaintiff's property and have failed, neglected and refused to return [it] and have prevented the plaintiff from removing same from said real estate." All of the parties to this action, namely, the town of Windham and Northeast, as well as the Windham Mills Development Corporation (Windham Mills), which acquired title to the mill complex on November 10, 1994, about two months after its taking by Northeast as the condemning authority for the town, have filed a number of special defenses, one of which invokes the doctrine of sovereign immunity as to each defendant.
The property which is the subject of this replevin action is described CT Page 12128 throughout the complaint as "personal property", although the alias tax warrant dated May 18, 1994, and signed by the tax collector for the town of Windham pursuant to § 12-162 of the General Statutes expressly states that its purpose was "to protect fixtures and other material of historic value". The property is referred to in the affidavit signed by a general partner of ATC that accompanied the writ of replevin, as having "little or no economic value and the removal cost probably exceeds the fair market value, although[ATC] desires possession of the property for historical purposes, purposes of reconstitution for works of art and/or salvage or for any other purpose [the] plaintiff deems appropriate [and that since] there is no fair market value of said personal property, a nominal bond of $100.00 is reasonable in [the] opinion [of the affiant]."
Jacob Pinson, an ATC partner who had been actively involved in discussions with the town concerning the proposed rehabilitation of the former mill complex, testified that the bulk of the machinery and equipment that was seized pursuant to the alias tax warrant was located in the main building known as Mill Two, on the first floor of which was a "huge machine shop" consisting of equipment and machinery bolted to the floor, but he acknowledged that he could not put a value on any individual item (other than a generator in the basement and some of the lathes in the machine shop), and in response to a question as to whether he meant the property was priceless or that it had no value, he stated that "they all have a value, and some of them are priceless", and concluded his testimony on direct examination, over the defendant's objection, by giving his own estimate of the value of the contents of the buildings as being between $250,000 and $400,000.
Pinson also testified that the machines were installed in the main building when it was originally constructed in the "late eighteen hundreds", and that any textile mill of that vintage would necessarily require and regularly utilize the machinery and equipment housed therein, but that the value of most of the property seized could be estimated only in terms of any historical significance that it might have. He also stated that at the time of the sheriff's seizure and the posting of the legal notice to that effect on May 19, 1994, he and Joshua Sandman, another ATC partner, who were attempting to gain access to Mill Two, were stopped by town police officers who told them that they no longer had the right to enter any of the buildings of the mill complex.
Pinson also testified on cross-examination that there had been no bill of sale given by Eastern Connecticut Industrial Park Associates in July of 1987, when title to the "land with all the buildings and improvements thereon situated" was conveyed to ATC by warranty deed, and it took possession of the machinery and equipment which the plaintiff now claims CT Page 12129 to be its own personal property. He also stated that ATC never declared the property that was seized as personal property to the town assessor because any taxes had long since been paid by the original owner of the mill complex.
David Page, a Windham County deputy sheriff, identified the tax warrant that he had served at the direction of Linda Theriault, the tax collector for the town of Windham, and testified that she told him at that time that the town was concerned about the machinery and equipment being taken out of the buildings in the mill complex and that she directed him to seize the property "in lieu of taxes" and to prevent the property from being removed from the premises, but that he would not characterize the property which was the subject of the seizure as "personal property" as described by plaintiff's counsel in the course of his questioning. He stated that he did nothing except to secure and protect the property and to post public notice of its seizure, and that he did not make "a final return of service [until] March 31, 1997."
In this connection, it should be noted that the defendants, Northeast and Windham Mills, filed a so-called "offer of judgment" on April 8, 1998. The purported "offer" was that ATC remove from the defendants' premises, at its own expense, the property that had been seized and secured pursuant to the alias tax warrant.
This court, before discussing the legal issues raised by the somewhat unusual underlying facts of this case, deems it to be not that our Supreme Court, on the basis of the same facts, albeit in the context of a civil rights action against various town officials, has already considered and ruled upon the plaintiff's federal and state constitutional claims that the town should be liable in damages for the "intentional abuse of [its] power of eminent domain [because of] the wilful, arbitrary and capricious seizure and condemnation of its property [in that it] had ordered the Windham tax collector, the defendant Linda Theriault, to levy an improper alias tax warrant on the personal property contained in the complex [and because the town] had ordered [its police officers] to prevent the plaintiff from exercising control over, and gaining access to, the complex and the [property contained] therein." ATCPartnership v. Windham, supra, 251 Conn. 599, 601. The court also noted in its decision that although "[a] municipality is not subject to constitutional reproach for a violation of the right to substantive due process simply because a taxpayer disputes the validity of the municipality's recourse to statutorily authorized mechanisms for the collection of local taxes [our] decision does not leave the plaintiff remediless [and it] remains free to pursue other avenues for relief that are better suited for its claim of improprieties in the seizure and condemnation of its property." Id. 615, 617, 609 n. 9. CT Page 12130
 I
Replevin proceedings in Connecticut are governed by § 52-515 of the General Statutes which provides that "[t]he action of replevin may be maintained to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention." The first essential element of the statutory cause of action that the plaintiff must establish in this case is that the machinery and equipment described in the alias tax warrant and referred to in the sheriff's return of service as "all of the property at the American Thread complex, Main Street, Willimantic as described in the attached list [which was] seized to `protect fixtures and other material of historic value'", were "goods or chattels" within the meaning of § 52-515. See Cornelio v. Stamford Hospital,246 Conn. 45, 49 (1998).
"Connecticut law defines fixtures as items which have become part of real property because the party annexing them to the realty intends that result." In re Spano, 161 B.R. 880, 887 (D. Conn. 1993). In the leading ease of Capen v. Peckham, 35 Conn. 88 (1868), it was held that to constitute a fixture, it is essential "that an article should not only be annexed to the freehold, but that it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which that part of the building was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a permanent accession to the freehold was intended to be made by the annexation of the article." Id. 94 (Emphasis added.)
The rule stated in Capen v. Peckham, supra, was applied in a case which involved conflicting claims to a factory bell that was placed in a tower built for that purpose, where the plaintiffs claimed that it was not a part of the realty because it did not come under the description in the mortgage deed of "fixed machinery", and therefore was not conveyed by the deed. Alvord Carriage Mfg. Co. v. Gleason, 36 Conn. 86 (1869). The court nevertheless held that it was real estate and formed a part of the structure of the mill building and that "it was as much a part of the factory as its posts and floors [because they] too were chattels before they were fixed in their places and [stated that the] deed expressly conveys the factory [and that] includes the entire factory building." Id. 87.
Machinery in a factory, such as a textile mill, may be considered to be CT Page 12131 personal property "when it is not firmly attached to the building, and can be moved without injury to it, or to the machinery itself [but such machinery] is not necessarily personal property [because that] depends upon the manner of its connexion with the realty [and] where this is not [shown] it may as well be presumed, that it was so affixed as to constitute it, while thus connected, a part of the building, as otherwise." Baldwin v. Walker, 21 Conn. 168, 183-84 (1851).
The rationale followed by our Supreme Court in these early cases is consistent with the proposition "that any and all machinery essential to the proper functioning of a plant, mill, or similar manufactory is a fixture, or is at least so presumed to be, irrespective of the manner in which it is annexed to the realty and even though it is not attached thereto at all." 35 Am.Jur.2d, Fixtures § 102 (1967). This view is sometimes referred to as the "integrated industrial plant doctrine" which is held in some cases to be the controlling test and apparently represents the modern trend of the decisions. Id.
Section 42a-9-313 (1)(a) of the General Statutes, which deals with security interests in fixtures for the purposes of the Connecticut Uniform Commercial Code, follows this state's jurisprudence concerning fixtures in that it recognizes that "goods are "fixtures' when they become so related to particular real estate that an interest in themarises under real estate law", thereby "indicating that [a] security interest in fixtures may in fact be a security interest in real estate."(Emphasis in original.) In re Spano, supra, 161 B.R. 888. Under Connecticut law as recently construed by the United States Bankruptcy Court for the District of Connecticut in that case, "the intention of the annexer as to whether an item is to be a part of the real estate controls the determination of whether that item is a fixture [but while] physical attachment to the land is certainly a factor to be considered in determining intent, it does not appear to be a prerequisite, so that an item could be used in connection with the land, but not permanently attached to it, and still be a real property fixture, especially where the use of the item is particularly adapted to the uses of the portion of the building in which the item is located." Id., 889 n. 12.
The Supreme Court of Pennsylvania, in a replevin action for the recovery of generators (which was decided long before the assembled or integrated industrial doctrine was adopted in that state), held that the generators were intended to be permanently attached to a building "as an integral and component part of the construction necessary in conducting the business for which the structure was erected [and that a] writ of replevin is effectual for the delivery of personal property only."Bullock Electric Mfg Co. v. Lehigh Valley Traction Co., 80 A. 568, 571
(Pa. 1911). "If the article or thing, the possession of which is sought CT Page 12132 to be recovered in such an action, has been so changed in character as to be no longer in the category of personal property, but has become a component, permanent, and necessary part of the realty, this form of action would not lie." Id.
Machinery and equipment "placed in an industrial establishment for permanent use, and necessary to the operation of the plant, become fixtures and hence a part of the real estate, regardless of whether they are physically attached thereto." Pennsylvania Chocolate Co. v. HersheyBros., 175 A. 694, 696 (Pa. 1934). Since at least 1934, Pennsylvania has subscribed to this so-called "assembled industrial plant doctrine" under which the fact that whether or not machinery can be removed without material injury to the building is not a controlling consideration. In reGriffin, 182 B.R. 8, 10 (M.D. Pa. 1995).
Although the Pennsylvania doctrine as articulated in its case law has not been expressly adopted as such by our Supreme Court, when the rule stated in Capen v. Peckham, supra, is applied to the facts offered by ATC itself through Jacob Pinson in the course of the condemnation trial, this court must conclude that "at the time the annexation was made [by the then owner, the American Thread Company] that a permanent accession to the freehold was intended to be made by the annexation [of the machinery and equipment]." Id., 94; see also Tolles v. Winton, 63 Conn. 440, 445
(1893). As stated earlier in this opinion, he testified that the bulk of the machinery and equipment was located in the main factory building when it was originally constructed in the 1890's and that any textile mill built at that time would necessarily require and regularly utilize the machinery and equipment housed therein.
For all of the foregoing reasons, the court finds that ATC has failed to establish the first essential element of a replevin action under the statute governing such actions, namely, that the machinery and equipment that ATC seeks to replevy in this case were not "goods or chattels" within the meaning of § 52-515 of the General Statutes, because under Connecticut case law they were"fixtures" under the facts and circumstances of this case at the time the alias tax warrant was served.
 II
Another essential element of a cause of action for replevin is that the property sought to be replevied (or the damages for its detention which ATC seeks in this action) must have been "wrongfully detained from [the plaintiff] in any manner" within the meaning of § 52-515 of the General Statutes. See Cornelio v. Stamford Hospital, supra, 246 Conn. 49
(Emphasis added.) Even if it were to be assumed that ATC, contrary to the court's conclusion in part I of this opinion, has nevertheless CT Page 12133 established the first essential element of its cause of action that the property seized was "goods or chattels" rather than "fixtures", the town's special defense of sovereign immunity raises a potentially dispositive issue, namely, whether or not its attempted collection of delinquent taxes by means of an alias tax warrant bars the plaintiff from pursuing the statutory remedy that it seeks in this case.
A municipal corporation "is a person in law, capable of inflicting injuries, and liable to suit by him who suffers them, unless they flow from or are incident to the performance of a governmental duty [and municipal] duties are governmental when they are imposed by the State for the benefit of the general public." Judd v. Hartford, 72 Conn. 350, 353
(1899). It has long been the law in this state that a "municipality is immune from liability for the performance of governmental acts [which] are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." Gauvin v. New Haven,187 Conn. 180, 184 (1982).
Municipal officials must necessarily be given a wide discretion in the performance of their duties and courts should not scrutinize their actions too closely unless they are clearly illegal and in abuse of their discretion because "[t]imidity and doubt would govern their performance of public duty [since the] affairs of government cannot be conducted with absolute exactitude, and public officials cannot be expected to act in all cases with certain judgment." Wadsworth v. Middletown, 94 Conn. 435,440 (1920). The doctrine of governmental immunity is based on the principle that governmental acts should be shielded from liability unless the legislature expressly makes an exception to that general rule, and one of its purposes "is to avoid injecting monetary claims of the public alleging harm arising out of the day-to-day operation of discretionary municipal functions." Tryon v. North Branford, 58 Conn. App. 702, 723
(2000).
The question of whether a replevin action may be maintained for the recovery of property in the possession of a municipal corporation depends upon whether such property was acquired by the municipality in the exercise of a governmental function, as distinguished from a proprietary or business function, and where the property was acquired in the exercise of a governmental function, the remedy by way of replevin is not available to a litigant who claims that it was wrongfully detained. 66 Am.Jur.2d, Replevin § 38 (1973). "There is no doubt but that the collection of taxes is a governmental function"; 18 McQuillan, Municipal Corporations (3d Ed. Rev. 1993) § 53.54, p. 388; and that the "doctrine of governmental immunity protects a municipality from suit for torts committed while its employees or officers are performing [tax collection] functions." Wall v. City of Raleigh, 465 S.E.2d 551, 553
CT Page 12134 (N.C.App. 1996).
Where a taxpayer asserts that the collection of a tax was made illegally or irregularly and without notice to him, equitable relief should be denied based upon considerations of public policy because "[i]t would interrupt the collection of taxes, one of the most important attributes of the sovereign power [and] one of its most vital functions." Arnold v.Middletown, 39 Conn. 401, 406 (1872). An alias tax warrant under what is presently General Statutes § 12-162 "is in the nature of an execution, but by long custom and usage here and in other jurisdictions, has issued without any previous judicial determination of liability [because this] method of collecting taxes is necessary to the full execution of the powers of the executive department of the State [and] the enforcement of the tax as assessed [does] not constitute the taking of property without due process of law [and is not] contrary to the provisions of the [federal and state constitutions]." Wilcox v. Madison,106 Conn. 223, 230-31 (1927).
The court finds, therefore, that the plaintiff has not proved that the machinery and equipment seized pursuant to the alias tax warrant were "goods or chattels" within the meaning of General Statutes § 52-515, but even if it had met its burden of proof as to that essential element of a cause of action for replevin, the doctrine of sovereign immunity clearly applies to the equally essential element of wrongful detention. Neither the municipality nor its codefendants should be exposed to liability "simply because a taxpayer disputes the validity of the municipality's recourse to statutorily authorized [universally recognized and quintessentially governmental] mechanisms for the collection of local taxes." ATC Partnership v. Windham, supra, 251 Conn. 615; see also In reGrand Jury, 535 F. Sup. 537, 538 (D. N.J. 1982).
Accordingly, judgment is entered in favor of the defendants, the town of Windham, Northeast Economic Alliance, Inc. and Windham Mills Development Corporation.
Hammer, JTR