[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS TO STRIKE BY DEFENDANTS VICTOR MANUFACTURING, A DIVISION OF F.W. WEBB COMPANY AND ENGINEERED CONTROLS INTERNATIONAL, INC. (##127 and 110)
The plaintiff United Technologies Corporation, through its Pratt Whitney division, maintains at its East Hartford facility a co-generation unit that generates electricity used by Pratt Whitney to satisfy a portion of its electricity needs at its East Hartford facility. An integral component of the co-generation unit is an ammonia storage tank system, which stores and then transfers ammonia for use in the co-generation process. The ammonia system is comprised of an ammonia storage tank and a piping system, whereby the ammonia is transferred from the storage tank to an ammonia skid.
The pipe that runs from the storage tank to the ammonia skid contains a hydrostatic relief valve, the function of which is to prevent the pressure in the pipe from reaching a critically high level which could cause the pipe to burst. The particular hydrostatic relief valve that was installed in Pratt Whitney's ammonia system was a RegO brand hydrostatic relief valve, model number SS8021G (the RegO valve), manufactured by the defendant Engineered Controls International, Inc. (ECII). That RegO valve was sold by the defendant Victor Manufacturing, a division of F.W. Webb Company (Victor), to the defendant Connecticut Boiler Repair Manufacturing Company, Inc. (Connecticut Boiler), and was installed in the ammonia system as the hydrostatic valve. The defendant Saren Engineering, Inc., designed the replacement ammonia system for the co-generation unit, and provided engineering services for the design of certain modifications to the ammonia systems. The defendant Connecticut Boiler fabricated the ammonia system based on Saren's design and trim schedule, which listed the parts to be used in the design of the replacement ammonia system.
The RegO valve was designed to open when the pressure in a pipe in the CT Page 12200 ammonia system reached a certain level, so as to prevent build-up of pressure that could cause the pipe to burst. Pratt Whitney claims that the RegO valve installed in the ammonia system malfunctioned, resulting in an ammonia leak at the East Hartford facility which caused this plaintiff commercial and non-commercial damages.
In this litigation, Pratt Whitney seeks damages as follows: from Saren for breach of contract, negligence and indemnification; from Connecticut Boiler for breach of contract and breach of warranty; and from ECII and Victor, noncommercial losses pursuant to the Connecticut Product Liability Act (General Statutes § 52-572 (m) et seq.) (CPLA), and commercial losses pursuant to article 2 of the Uniform Commercial Code (General Statutes § 42a-2-101 et seq.) (UCC).
ECII and Victor have separately moved to strike the counts of the complaint against them that allege their breach of UCC implied warranties (counts 7 and 9, respectively). The motions to strike (##127 and 110) are based on Pratt Whitney's failure to allege privity of contract with either ECII or Victor. Pratt Whitney concedes that it did not have contractual privity with either movant.
The function of a motion to strike is to test the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989); Practice Book § 10-39(a)(5). "[A motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. . . ." (Citations omitted; emphasis omitted). Mingachos v.CVS, Inc., 196 Conn. 91, 108, 498 A.2d 368 (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted). NovametrixMedical Systems v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992). "The role of the trial court is to examine the pleadings and construe the allegations in the light most favorable to the pleader in order to determine whether the pleader has stated a legally sufficient cause of action or defense." ATC Partnership v. Windham, 251 Conn. 597,603, 741 A.2d 305, cert. denied, 530 U.S. 1214, 120 S.Ct. 2217,147 L.Ed.2d 249 (1999).
The CPLA provides the exclusive remedy against product sellers for claims of personal injury, death, property damage and other damages arising from the use of a defective product. See Winslow v.Lewis-Shepard, Inc., 212 Conn. 462, 471, 562 A.2d 517 (1989). The act's coverage includes, but is not limited to, actions based on strict liability in tort, negligence, breach of warranty (express or implied), breach of or failure to discharge a duty to warn or instruct, and misrepresentation or nondisclosure. General Statutes § 52-572m (b). CT Page 12201 The act eliminates the requirement of privity between the product seller and the injured party. See General Statutes § 52-572n (b). The act further provides that "commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, Title 42a, the Uniform Commercial Code." General Statutes § 52-572n (c).
The CPLA thus distinguishes commercial losses from other product-related claims. Commercial losses such as those sought in counts 7 and 9 of Pratt Whitney's complaint against ECII and Victor must be claimed under the UCC.
Pratt Whitney concedes that privity is essential to a warranty claim asserted pursuant to §§ 42a-2-314 and 42a-2-315. Section 42a-2-318
of the UCC sets forth limited exceptions to the privity requirement by extending the coverage of a seller's warranty to natural persons who are members of the buyer's household or guests in his home. This provision concludes as follows: "This section is neutral with respect to case law or statutory law extending warranties for personal injuries to other persons." Being neither a natural person nor a pleader seeking personal injury damages, Pratt Whitney is not entitled to the extension of coverage under General Statutes § 42a-2-318.
In its opposition papers, Pratt Whitney argues that the court should apply developing case law that relaxes the privity requirement when a claimant otherwise is without a remedy. Such a result would permit this plaintiff to pursue its warranty claims for commercial losses against ECII and Victor. Otherwise, Pratt Whitney is without a remedy for recouping its commercial loss (which it believes constitutes the great majority of its damages) against ECII and Victor.
In support of its position, Pratt Whitney relies on federal cases applying article 2 of the UCC, including Utica Mutual Ins. Co. v. DenwatCorp., 778 F. Sup. 592 (D.Conn. 1991); Quadrini v. Sikorsky AircraftDiv., 505 F. Sup. 1049 (D.Conn. 1981); and Drescher v. Hoffman MotorsCorp., 585 F. Sup. 555 (D.Conn. 1984). The Drescher and Quadrini cases are distinguishable from the instant case in that they both involve personal injury claims. In Quadrini, the plaintiffs were the estates of individuals who were killed in a helicopter crash. The plaintiffs' decedents were all employees of the company which had purchased the helicopter. The federal court applied Connecticut law, noting that Connecticut law permitted a relaxation of the privity requirement in certain cases where no alternative remedy was available. The court relied upon Connecticut decisions that relaxed the privity requirement in cases CT Page 12202 claiming damages for personal injury. A similar result in a personal injury case was reached in the Drescher decision, in which the privity requirement was relaxed in favor of an auto mechanic who was injured when a car he was repairing drove into him.
In both Drescher and Quadrini, unlike the instant case, the plaintiffs were seeking damages for personal injuries. Those decisions were based on Connecticut authority, Garthwait v. Burgio, 153 Conn. 284, 216 A.2d 189
(1965), and Hamon v. Dagliani, 148 Conn. 710, 174 A.2d 294 (1961), which relax the privity requirement for breach of warranty claims in personal injury cases.
The Utica case, like the instant case, involved commercial losses. It is distinguishable, however, because the plaintiff was the insurer in a subrogation claim for a commercial entity that was in privity with thedefendant manufacturer. Pratt Whitney relies on Utica as a decision consistent with the commentary to the UCC warranty section 42a-2-318, which notes that: "The warranty sections of the article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract."
ECII and Victor rely on the expectations that arise from the UCC with respect to the limitations on liability and warranty actions. The United States Supreme Court noted in East River Steamship Corp. v. TransamericanDelaval, 476 U.S. 858, 874, 106 S.Ct. 2295, 90 L.Ed 2d 865 (1986), that "[a] warranty action . . . has a built-in limitation on liability. . . . The limitation in a contract action comes with the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of the breach. . . . [W]here the loss is purely economic, the limitation derives from the requirements of forseeability and of privity. . . . Permitting recovery for all forseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product." (Citations omitted.) Id.
The policy noted by the United States Supreme Court is evident in the choice by the Connecticut legislature to limit the CPLA relaxed privity requirement to non-commercial losses. The CPLA at General Statutes §52-572n specifically places claims for commercial loss within the purview of the UCC and its privity requirements. The result, which is herein recognized and opposed by Pratt Whitney, is that a plaintiff may be left without a remedy for its commercial losses. CT Page 12203
That result, however, is not grounds for extending the exception to the UCC privity requirement. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the water, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." Waters v. Autori,236 Conn. 820, 828, 676 A.2d 357 (1996). A closely analogous superior court decision noted: "If [an entity] already one step removed from the transaction were permitted to recover their economic losses, then the companies that [use their services] might claim their economic losses from their delays, and their customers also might claim their economic losses, and so on. The law does not spread its protection so far." Bosekv. Valley Transit District, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 39674, (December 10, 1993, Rush,J.)
 CONCLUSION
The policy arguments relating to commercial predictability and limitations of liability encompassed within the legislatively enacted UCC should trump judicially devised concepts intended to create a forum for every conceivable injury or loss. Accordingly, the motion to strike by ECII ((#110) is granted as to Count 7 of the April 16, 2002, complaint. The motion to strike by Victor (#127) is granted as to Count 9 of the April 16, 2002, complaint.
ROBERT F. McWEENY, J. CT Page 12204