ANTHONY NOVAK, TRUSTEE, ET AL. *v.* CHARLES
SCALESSE
(14670)

Dupont, C. J., and Lavery and Spear, Js.

Argued January 8—officially released July 18, 1996*

* July 18, 1996, the date that this decision was released as a slip opinion is the operative date for all substantive and procedural purposes.

*William C. Turney*, with whom, on the brief, were *John R. McGrail* and *Charles Angelo*, for the appellant (defendant).

*Tracy Alan Saxe*, for the appellees (plaintiffs).

DUPONT, C. J. The sole issue in this legal malpractice action is whether the trial court abused its discretion when it set aside a jury verdict in favor of the defendant and ordered a new trial. The resolution of this issue depends on whether the jury's answer to one of the interrogatories posed to it properly formed a basis for the court's action.

The plaintiffs, John Scalesse, Samuel Piccione and Scalesse, Scalesse and Piccione, a partnership,[1] brought suit against Charles P. Scalesse claiming that he had, without authority, and contrary to their wishes, caused a release of mortgage to be filed on the land records of the town of New Haven. They alleged, in three counts, that the defendant was negligent and that his professional conduct as an attorney lacked the requisite degree of skill and care of attorneys practicing in Connecticut, that the defendant had breached an agreement with them, and that he had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] The defendant pleaded two special

---

[1] Anthony Novak, trustee for the bankruptcy estate of John Scalesse, was substituted as a party plaintiff for John Scalesse after the suit was instituted. The partnership consisted of three general partners. The third partner, Richard Scalesse, did not join in the action.

[2] We are concerned on appeal only with the first count because the motion to set aside the verdict was granted only as to it. Although the jury also answered the interrogatories relating to the other two counts in favor of the defendant, the trial court did not consider the motion to set aside the verdict on the basis of either of those counts because the plaintiffs had not complained of those counts in their original motion to set aside the verdict. The court ruled that their subsequent "amendment to set aside verdict"

defenses. He alleged that any damage to the plaintiffs was caused by their own negligence because the release was delivered at their own request or at the request of their authorized representative and that any damage to them was the result of the use of the release by the plaintiffs or their authorized representative.

The jury finding at issue is contained in the jury's response to interrogatory IA: "At the time Charles P. Scalesse gave the release of the mortgage to others to be recorded, he (did) (did not) [the word 'did' was crossed out] have a duty of care to Samuel Piccione either individually or as a partner in a partnership known as SS & P or Scalesse, Scalesse & Piccione."[3] The verdict form indicated that if the answer was "did not," rather than "did" that the jury was not to answer the next interrogatories, which related to the first count.

The court concluded that the jury could not have reached that conclusion reasonably and legally and that the jury's conclusion was so plainly and palpably the product of mistake in applying legal principles that the determination must be set aside. The court also concluded that the jury had not been attentive to the evidence. These conclusions were based on the court's view that there was no evidence to support the jury's finding in interrogatory IA, that the jury had spent three

could not cure this deficiency because no motion to set aside the verdicts as to those counts had been filed within five days of the verdicts as required by Practice Book § 320.

In the answers to two other interrogatories relating to the second and third counts, the jury found that there was no agreement that the defendant "would allow the release of mortgage to be filed only in the event of a sale or upon receipt or permission of Samuel Piccione to use it as to a different event"; and that the defendant did not "engage in unfair or deceptive acts or practices in the conduct of his trade as an attorney with regard to Samuel Piccione."

[3] For ease of reference, we refer to this interrogatory only, as did the trial court in its memorandum of decision, because an interrogatory concerning John Scalesse was identical to the interrogatory concerning Samuel Piccione.

days in deliberation, and that it had received a "Chip Smith" charge[4] before delivering a verdict at 5 p.m. on a Friday. The court stated in its memorandum of decision that the "sequence of events [the three days of deliberation, the Chip Smith charge and the timing of the verdict] and the affect of the jurors in the courtroom suggests a jury eager to end its deliberations without going into another work week and not attentive to the actual evidence after three days spent mostly in deadlock."

The court did not elaborate on the meaning of the word "affect," or explain in any way what observable demeanor led to the conclusion that the jury was eager to end deliberations. The court also stated that "[f]urther reason to suspect mistake or misapprehension of the principles involved arises from the fact that defense counsel, in closing argument, emphasized the plaintiff Piccione's lack of present contacts with New Haven and characterized him, in effect, as a wheeler-dealer from New Jersey, who left New Haven after signing the mortgage release. The jury may have been misled by this argument into thinking that persons no longer located physically near to a lawyer are not owed a duty of care by that lawyer." The court determined that "the jury's ruling as to the first count of the complaint can only be explained as the product of mistake or improper influences . . . ."

The setting aside of a verdict can occur for two general reasons. First, a trial court may set aside a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury, mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied. *Maroun* v. *Tarro*, 35 Conn. App. 391, 396, 646 A.2d 251, cert. denied, 231 Conn. 926, 648 A.2d 1641 (1994). Second, a verdict may be set aside if its result

---

[1] See *State* v. *Smith*, 49 Conn. 376 (1881).

justifies a suspicion that a juror or jurors were influenced by prejudice, corruption or partiality. We will first discuss the court's conclusion that the answer can be explained only as the product of mistake or improper influences. We must decide whether the circumstances justified a suspicion that the jury was influenced by prejudice, corruption or partiality. It is accepted practice to deliver a "Chip Smith" charge and its use does not negate an otherwise proper jury verdict. *State* v. *Ryerson*, 201 Conn. 333, 349, 514 A.2d 337 (1986). Such a charge does not require a reversal of a verdict even if it is known before it is given that as of that time all but one juror would vote a certain way; *State* v. *Avcollie*, 188 Conn. 626, 641, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); or if it is given on the third day of deliberations. *State* v. *O'Neill*, 200 Conn. 268, 281–84, 511 A.2d 321 (1986). No claim in this case is made that the charge itself was improper, nor was there any exception to it, nor was there a motion for a mistrial made when it was given.

The court inquired of the jury after the verdicts were read to them if the verdicts were theirs and if "so say you all" to which the jury responded affirmatively. The court then asked the clerk to read the verdict forms a second time, reading only those answers designated without reading the unanswered material. The court then asked that each juror be polled individually by name. Each juror stood and orally agreed that the verdicts were accurate. The court then thanked the jury for their work and said "I believe you have worked hard and you've listened to a much longer trial than most jurors are ever asked to participate in and a complicated trial." Lastly, the court told the jury that it would be available to them if they chose to speak to the court about the way they had been treated or about court personnel or rooms.

No objection was made to the remarks of the defendant's counsel in closing argument, nor did the court interrupt the summation, nor did the court give a curative instruction to disabuse the jury of any notion that the defendant's counsel had made a specific comment that should not be heeded by it. The court advised the jury in its charge that "what the lawyers may have said to you in their respective summaries . . . as to the facts or evidence should have weight with you only if what they've said matches up with your recollection." Later in its charge, the court stated as follows: "I'll caution you again that the statements made by lawyers both at the beginning of the case and at the end of the case, and sometimes, though I certainly tried to limit that during the case when they would get up and object, are not evidence in the case. You're not to treat their arguments as evidence and you're not to treat any part of those opening or closing statements as evidence, they are merely comments on the evidence. And if you find that they referred to matters that were not put into evidence or not within the scope of the claims here or are contrary to my instructions to you, you should completely erase such arguments from your mind."

No counsel took exception to that portion of the charge that instructed the jury as to the process of answering interrogatories. No exception was made as to the form of the interrogatory in question or to its content, nor did the trial court indicate that the interrogatory could not be answered because of a lack of evidence or could only be answered "yes." This case does not involve an inconsistency among or between interrogatories or to a claim that the verdict is inconsistent with an interrogatory or with the interrogatories.

There is nothing in the record to indicate that the jury was improperly influenced by the final argument or that the jury's answer to the interrogatory occurred because of its inattention to the evidence or because

of the time of day or the day of the week, or the length of deliberation, or to anything improper. We cannot conclude that the circumstances justified a suspicion that the jury was influenced by prejudice, corruption or partiality. The setting aside of the verdict, therefore, cannot be sustained on that ground. *State* v. *Avcollie*, 178 Conn. 450, 460, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980).

The other ground for setting aside a verdict rests on a finding by the trial court that, given the evidence presented, the jury mistakenly applied a legal principle or could not apply a legal principle because of a lack of evidence. The legal malpractice alleged by the plaintiffs was that the defendant negligently permitted a mortgage release to be filed when he was without authority to allow it to be done. This negligence was allegedly based on the duty of care that the defendant, as the lawyer for the partnership or as the lawyer for the individual plaintiffs, owed to it or to them. The defendant claimed that he had authority to deliver the release by virtue of a request in writing by another of the general partners, Richard Scalesse, who was responsible for the day to day operations of the partnership. The transcript reveals that the defendant does not deny that he represented the partnership. The defendant's expert testified that "I believe that when Mr. Charles Scalesse was confronted by a general partner of a general partnership and asked to deliver unto the general partnership that which was theirs, meaning the release from his files, that he met the standard of care by delivering that release to the general partner. And it would have been risky for him not to deliver the release. It was the property of the partnership and he had received a request from someone who had the authority to request it and appeared to Charles Scalesse to have the authority to request it."

In effect, the expert testified that, based on his assumption that the defendant was the legal counsel to the partnership, the defendant acted within the requisite standard of care when he gave the release of mortgage to one of the three partners upon request. The duty of care owed to the partnership arose because of his relationship with the partnership as its attorney.[5] The interrogatory asked the jury to determine whether the defendant had a duty of care to Samuel Piccione individually or as a partner in the partnership. It did not ask whether the defendant had a duty of care to the partnership, which admittedly, he did.[6] The court states that the defendant admitted that he was Piccione's attorney, and that, therefore, the jury should not have answered the interrogatory as it did.[7] The defendant's testimony, however, could have been interpreted by the jury to indicate that, although the defendant admitted that he represented the partnership, he did not admit that he represented Piccione, except in the sense that Piccione was a member of the business entity, the partnership.[8]

[5] The defendant presented evidence that the mortgage, which was released, was the property of the partnership and was treated as such for federal income tax purposes.

[6] "A partnership usually is a legal entity and is the lawyer's client. Thus, a lawyer who represents a partnership does not thereby become counsel for or owe a duty to the partners." 3 R. Mullen & J. Smith, Legal Malpractice (4th Ed. 1996) § 24.8.

[7] The trial court in its reasoning for setting aside the verdict does not indicate that it considered the credibility of witnesses in determining whether the interests of justice required it to set aside the verdict. See *Gaines* v. *Manson*, 194 Conn. 510, 520–21 n.12, 481 A.2d 1084 (1984); but see *State* v. *Hammond*, 221 Conn. 264, 267, 604 A.2d 793 (1992) (credibility not specifically mentioned as factor in determination of motion to set aside).

[8] The relevant colloquy between the plaintiffs' counsel and the defendant is as follows:

"Q. Did you represent Sam Piccione or not?

"A. I've represented—In what context sir?

"Q. On December 6, 1984, was Sam Piccione your client or not?

"A. He was a member of a partnership that was my client.

"Q. Was he your client or not? Yes or no?

"A. He was a member or a partnership that was my client.

The jury in its answer concluded that the defendant did not owe a duty of care to Piccione individually because the plaintiffs had not proved that he did by a fair preponderance of the evidence. "In a tort case . . . if the trier of fact finds that it is equally likely that the defendant did or did not breach a duty [or have a duty] that caused the plaintiff's harm, then the defendant must prevail." *State* v. *Hammond*, 221 Conn. 264, 288 n.11, 604 A.2d 793 (1992).

The court notes that the testimony of the plaintiffs' expert was that the defendant owed all of the plaintiffs a duty of care with regard to the use of the release of mortgage. The jury, however, was not obligated to credit that opinion. The court speaks of the "lack of evidence, either direct or circumstantial, sufficient to support the jury's findings." The defendant, however, did not have to prove that he did not owe a duty of care to the partnership that was breached or that he did not owe a duty of care to an individual member of the partnership that was breached. That burden was on the plaintiffs, and the jury determined that the plaintiffs had not met their burden. A failure to prove a cause of action because of a lack of evidence may be one reason to set aside a verdict for a plaintiff, but it is not a reason to set aside a verdict for a defendant.

There are only two cases of which we are aware in which, on appeal, it was determined that the trial court should have set aside a verdict for a defendant, and

"Q. Does that mean yes or does that mean no?

"A. It means what I just said.

"Q. Well, does that mean? You're the lawyer. What does that mean? Was he your client or wasn't he your client?

"A. He was part of a partnership that was my client.

"Q. Was he your client?

"A. If he was part of that partnership I guess he was my client, yes.

"Q. Okay. So the answer is yes. Sam Piccione, on December 6, 1984, was your client, is that correct?

"A. Yes."

none where there was a conclusive negative answer to an interrogatory that required an affirmative answer in order for a plaintiff to prevail on a cause of action.

In *Labatt* v. *Grunewald*, 182 Conn. 236, 241–42, 438 A.2d 85 (1980), it was held that the trial court should have granted a motion to set aside a verdict for a defendant because the circumstances showed that the jury was hopelessly confused over the doctrine of comparative negligence. There were no interrogatories. The original verdict stated that "[t]he jury finds the issues for the defendants . . . . We feel both parties are equally responsible." (Internal quotation marks omitted.) Id., 237. This verdict was initially accepted by the court but subsequently vacated because the verdict was inconsistent on its face. Id., 237–38. Subsequent verdicts, after recharges by the court, continued to indicate confusion. Id., 238–40. The jury verdicts showed that the jury was confused as to how to apply facts to an issue of law, rather than confused as to the existence of a fact. Id., 241.

In *Palomba* v. *Gray*, 208 Conn. 21, 543 A.2d 1331 (1988), a paternity action, the plaintiff had established a prima facie case, and the burden of proof had shifted to the defendant to prove his innocence by evidence other than his own testimony. During the defendant's case he did not offer any other evidence that was relevant to the issue of paternity.[9] Under the circumstances, the verdict for the defendant should have been set aside because the defendant had the burden of proof, which, as a matter of law, he had not sustained. Id., 26.

Both *Labatt* and *Palomba* are examples of the general rule that a verdict for a defendant should be set aside

---

[9] The jury had been charged that the burden of proof shifted to the defendant after the establishment of a prima facie case by the plaintiff, but had not been told that evidence other than the defendant's denial of paternity was needed to satisfy that burden. *Palomba* v. *Gray*, supra, 208 Conn. 27.

if the verdict cannot be legally sustained. Neither case is one in which a defendant's verdict was set aside because a jury answered a question in the negative involving a fact that it was the plaintiff's burden to prove.

Before determining whether the granting of a motion to set aside is proper, the trial court must look at the relevant law that it gave the jury to apply to the facts and at the facts that the jury could have found based on the evidence. The law and evidence necessarily define the scope of the trial court's legal discretion. See *Gesualdi* v. *Connecticut Co.*, 131 Conn. 622, 627, 41 A.2d 771 (1945). This discretion vested in the trial court is not an arbitrary or capricious discretion, but rather, it is legal discretion to be exercised within the boundaries of settled law. Id. This limitation on a trial court's discretion results from the constitutional right of litigants to have issues of fact determined by a jury. *Young* v. *Data Switch Corp.*, 231 Conn. 95, 100–101, 646 A.2d 852 (1994); *Seals* v. *Hickey*, 186 Conn. 337, 350, 441 A.2d 604 (1982). "This right is an obviously immovable limitation on the legal discretion of the court to set aside a verdict . . . ." (Internal quotation marks omitted.) *Young* v. *Data Switch Corp.*, supra, 101. In reviewing the issue of whether a trial court abused its discretion in setting aside a verdict, "our sole responsibility is to decide whether, on the evidence presented, the jury could fairly have reached the conclusion it did." *Skrzypiec* v. *Noonan*, 228 Conn, 1, 11, 633 A.2d 716 (1993).

Each juror in this case was polled individually as to his or her answer to the interrogatory and his or her verdict for the defendant, and acknowledged in open court that each agreed that both were accurate. The jury could have determined that the plaintiffs did not sustain their burden of proving that the defendant owed a duty of care to Piccione individually or to John

Scalesse individually. The defendant had no burden to prove that he did not have a duty of care to them.

We conclude that the verdict reflects no manifest injustice so plain and palpable as to clearly denote that a mistake was made and that, therefore, the trial court improperly exercised its discretion in setting aside the verdict for the defendant on the first count of the plaintiffs' complaint and ordering a new trial.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.