[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO SET ASIDE VERDICT
This case arose out of a motor vehicle accident on April 24, 1997 in Windsor, Connecticut. The trial was conducted on July 1 and July 6, 1999, and resulted in a defendant's verdict. The plaintiff, Alex Visoky, on July 14, 1999, pursuant to Practice Book § 16-35, timely filed a motion to set aside the verdict. Although the plaintiff originally based his motion on the sole ground that the jury mistakenly rendered a verdict for the defendant by failing to follow the instructions of the court on the issue of comparative negligence, he subsequently also briefed and argued that a defendant's verdict was contrary to the evidence.[1]
 I
"The setting aside of a verdict can occur for two general reasons. First, a trial court may set aside a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury, mistakenly applied a legal principle or because there is no evidence to which the legal principles or the case could be applied. . . . Second, a verdict may be set aside if its result justifies a suspicion that a juror or jurors were influenced by prejudice, corruption or partiality." Novak v. Scalesse, 43 Conn. App. 94, 97,681 A.2d 968, cert. granted, 239 Conn. 925, 682 A.2d 1004 (1996).
A "verdict will be set aside and judgment directed only if [the court finds] that the jury could not reasonably and legally have reached their conclusion." (Internal quotation marks omitted.)Ham v. Greene, 248 Conn. 508, 519, 729 A.2d 740 (1999). "The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict, but should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles. . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of broad legal discretion. . . . Limiting that discretion, however, is the litigants' constitutional right to have issues of fact determined by a jury where there is room for a reasonable difference of opinion among fair-minded jurors." (Internal quotation marks CT Page 3759 omitted.) Purzycki v. Fairfield, 244 Conn. 101, 106-07,708 A.2d 937 (1998). "In making the determination as to whether to set aside a verdict, `[t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable.'" Gaudio v. Griffin Health Services Corp. ,249 Conn. 523, 534, 733 A.2d 197 (1999), quoting Fink v. Golenbock,238 Conn. 183, 208, 680 A.2d 1243 (1996). However, "[t]he trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . The supervision which a judge has over the verdict is an essential part of the jury system." (Citation omitted; internal quotation marks omitted.) Palomba v. Gray, 208 Conn. 21, 23-24,452 A.2d 1331 (1988).
 II
Considering the evidence in the light most favorable to sustaining the verdict, the jury reasonably and logically could have concluded the following facts: The plaintiff, Alex Visoky, a taxi driver, picked up a passenger, Michael Dahlem, at Bradley International Airport in Windsor Locks, and was driving him to his home in Windsor when an accident with the defendant occurred on Marshall Phelps Road, a two-way, two-lane road. The defendant, Leandre Lavoie, and his wife were out looking for tag sales and were looking for a tag sale sign at the end of a driveway of a particular address on the left hand side of the road. They were traveling no more than five miles per hour in Lavoie's 1990 Plymouth Voyager Minivan, which was positioned mostly in the right travel lane of the road but partially on the shoulder. Lavoie was talking to his wife and perhaps looking at her as he did so at the time of the accident. As the plaintiff came upon Lavoie's vehicle, he crossed the double center line to go around it because it was moving very slowly. As Visoky was going around Lavoie's vehicle, Lavoie began to turn left intending to go into a driveway on the lefthand side of the road where he and his wife spotted the "little tag sale sign." In turning left, Lavoie struck the plaintiff's taxicab, a Chevrolet Caprice Station Wagon, in the right rear quarter panel, causing the plaintiff's right rear tire to go flat. The accident occurred just beyond a blind curve in the road. After the police came to the scene, Visoky changed his tire. Visoky claimed injury to his neck, back and right thigh and went to a chiropractor one week after the accident. The passenger Dahlem was not injured, did not otherwise know Visoky, and had no interest in the outcome of the case. He was familiar with the road as it was very near his home. On CT Page 3760 Marshall Phelps Road, there is only a three foot or so shoulder so that if a car were trying to pull over to the right, there is no way to pull completely out of the travel portion of the road. Dahlem walked home from the accident scene after being interviewed by a police officer. The repair estimate for Visoky's taxicab was $1310.58. It included damage to the right quarter panel, molding, hubcap, wheel well and door. Damage to Lavoie' s minivan consisted of a broken left front headlight and damage to the left front fender and quarter panel and amounted to over $1400.00. Several photographs of the damage to each vehicle at various angles were included as exhibits. Visoky missed four days of work as a result of accident which amounted to a lost wage claim of $1000.00. He also worked only seven to eight hours per day for three months as opposed to his typical twelve to fourteen hours per day for which he made no claim. Plaintiff's usual activities were limited for approximately six months after the accident. The plaintiff treated at Hartford Chiropractic Group for three months in May, June and July 1997 and was essentially healed within three to four months post-accident.
 III
The court finds that while the jury reasonably and legally could have found the plaintiff to be contributorily negligent, that negligence could not have reasonably or legally exceeded 50%. Further, although the defendant sought to minimize the plaintiff's injuries at trial, the testimony of two chiropractors on the issue of causation was essentially uncontroverted. It is therefore disingenuous of the defendant post-trial to claim as he did, that even if the jury found liability in favor of the plaintiff, they reasonably could have found no injury proximately caused by the accident.
The plaintiff's claims of negligence were supported both by the testimony of a passenger in the taxicab at the time of the accident, an unimpeached independent witness familiar with Marshall Phelps Road, and the physical evidence illustrated by numerous photographs of the property damage to both vehicles which were submitted as full exhibits. Significantly, the photographs establish that the defendant struck the plaintiff's station wagon in the right rear quarter panel with the left front of his minivan in the area of the minivan's left headlight. The only reasonable inference that could be drawn from this physical evidence is that the taxicab had to be almost completely past the minivan when the defendant began his left turn. Therefore, these CT Page 3761 factors combine rather convincingly to support the plaintiff's common law claim that the defendant failed to keep a proper lookout in attempting his left turn into a driveway. This claim is also supported by Lavoie's own admission that he slowed down to five miles per hour so as not to miss the "little tag sale sign" that he and his wife, an older couple, were looking for on the left hand side of the road. The defendant also conceded that he may have been talking to his wife and even looking at her as he did so while they searched for the address with its telltale tag sale sign located just after a curve in the road. In addition, the defendant's own testimony supports the plaintiff's statutory claim that at the time he crossed the double line to go around Lavoie, the minivan was traveling at "such a slow speed to impede or block the normal and reasonable movement of traffic" in violation of Section 14-220 of the General Statutes. The clear weight of the evidence in support of the plaintiff's claims therefore persuades the court that the negligence of the defendant was significantly greater than any proven negligence of the plaintiff.
The court's conclusion that the jury could not reasonably and logically have found the plaintiff to be more than 50% negligent is buttressed by the fact that undisputed post-verdict discussions with jurors by both the court and counsel for the parties indicated that all of them believed this case to be one of 50-50 negligence and mistakenly concluded that this meant that the plaintiff did not prove his case.
General Statutes § 52-572h (b) states: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought. . . ." The court properly instructed the jury that if they find that the plaintiff Visoky was fifty percent or less responsible for the accident, then the jury must return a verdict for the plaintiff.[2] Despite the court's instructions and their own unanimous conclusions, as clearly expressed in post-verdict discussions, that the negligence of both parties, Visoky and Lavoie, amounted to fifty percent each[3], the jury rendered a verdict for the defendant.
Given the weight of the evidence in plaintiff's favor as further supported by the post-verdict comments of the jurors, the CT Page 3762 verdict was manifestly unjust and based on a mistake of law. Specifically, it appears that the jury confused the concepts of comparative negligence with the burden of proof in a civil case not unlike the jury in the case of Labatt v. Grunewald,182 Conn. 236, 241, 438 A.2d 85 (1980). In Labatt, jurors concluded that the parties were "equally responsible" for the plaintiff's injuries but rendered a verdict for the defendants, contrary to the trial court's instructions and the law. Initially, the trial court accepted the verdict, later vacated it and recharged the jury on the law of comparative negligence. Id., 237-38. The jury demonstrated further confusion by indicating that they did not understand the court's instructions. Id., 239. Even after the court reinstructed them, the jury returned a verdict for the defendants. Id. Before accepting the verdict, the court asked each of the jurors: "`[D]id you find the plaintiff fifty-one percent or more negligent, or did you find the plaintiff fifty percent or less negligent?'" Id. Each juror responded "fifty percent or less." Id., 239-40. The court presented the jury with an interrogatory asking the amount of negligence for each party. Id., 240. The jury responded that none of the members of the jury felt that anyone was negligent in the case. Id. The trial court polled the jury, accepted a verdict for the defendants, and denied the plaintiff's motion to set aside the verdict. Id. On appeal, the Connecticut Supreme Court held: "Where it is clear that the jury [was] confused and that the verdict rendered is illogical and unreasonable in light of the instructions given . . . the evidence presented . . . or the interrogatories addressed . . . the trial court is obliged to set the verdict aside." (Citations omitted.) Id., 241-42.
While the Connecticut Supreme Court has addressed the question of impeachment of a jury verdict several times, the unique circumstances of this case distinguish it from prior cases. First, both the judge and trial counsel had conversations with the jurors and learned about the jurors' misunderstanding of the law subsequent to the trial. Second, the jurors were unanimous in their conclusions despite their mistaken verdict. Third, failure to set aside the verdict in the instant case would result in a grave miscarriage of justice.
It is apparent that the verdict rendered in this case was contrary to the evidence as well as to the jury's own unanimous factual conclusions. The court and the attorneys learned immediately following the discharge of the jury about their mistaken verdict. The "mental processes by which the verdict was CT Page 3763 determined" are therefore irrelevant to this finding and remain inviolate. See Practice Book § 16-34,
Accordingly, under all the circumstances, to allow the defendant's verdict to stand, would clearly result in a manifest injustice to the plaintiff. Therefore, the plaintiff's motion to set aside the verdict is granted and a new trial is ordered.
Peck, J.