[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR JUDGMENT IN ACCORDANCE WITH MOTION FOR DIRECTED VERDICT AND MOTION TO SET ASIDE VERDICT OF DEFENDANTS DARROW AND RUSSELL
On December 2, 1999, a jury returned verdicts in favor of the plaintiff against two of the remaining defendants in the above-captioned action, brought under the federal Civil Rights Act, 42 U.S.C. § 1983. The plaintiff claimed that three fire officials of the Town of Fairfield, Clarence Darrow, David Russell, and William Schuman, had violated his right to pursue his occupation as the operator of a bar and night spot in the beach area of Fairfield. Specifically, in Count One of his Substituted Complaint dated November 9, 1999, the plaintiff alleged deprivation of his liberty interest "to engage in the operation of his chosen profession and/or business and of his property rights in his business in violation of the Fifth andFourteenth Amendment to the United States Constitution and Title 42 of the United States Code § 1983."
The claim submitted to the jury was a claim of a violation of the right of the plaintiff, Steven Levine, to substantive due process of law.[1] The plaintiff's claim at trial was that the three fire officials had interfered with his constitutional right to engage in a lawful occupation by excessively and intrusively visiting the bar, making counts of occupancy upon anonymous complaints of overcrowding, and threatening to shut down his business.
When the plaintiff rested with regard to his proof of his claims of violation of substantive due process, defendants Darrow, Russell and Schuman each moved for a directed verdict on all claims. The court granted the portion of the motion that related to a claim of vexatious litigation against defendant Darrow (Count Two of the Substituted Complaint). The court also charged out the portion of Count 1 in which the plaintiff alleged a violation of his right to substantive due process from the allocation of the original occupancy rating to the plaintiff's bar by defendant Darrow. Pursuant to Practice Book § 16-37, the court reserved decision on the remaining ground, that is, that as a matter of law, the proof adduced in support of the claims made against the defendants in Count One did not establish a violation of the plaintiff's right to substantive due process. CT Page 4592
The jury returned verdicts in favor of the plaintiff against defendants Darrow and Russell. It returned a verdict in favor of defendant Schuman. The verdicts were returned on December 2, 1999. Two weeks later, in ATC Partnership v. Windham,251 Conn. 597 (1999), the Connecticut Supreme Court rendered a decision on the issue of the nature of the proof needed to establish a claim of violation of the right to substantive due process of law and plainly indicated that the issue is a matter of law to be determined by the court.
Pursuant to Practice Book § 16-37, defendants Darrow and Russell have filed a Motion for Judgment in Accordance with Motion for Directed Verdict and a Motion to Set Aside Verdict.
This court finds that the standard announced by the Supreme Court with regard to claims of violation of the right to substantive due process as well as the precedents of the federal courts on the issue, require the defendants' motions for a directed verdict to be granted and the jury verdicts against defendants Darrow and Russell to be set aside.
Standard for a Directed Verdict
A trial court may direct a jury to reach a particular verdict on a claim if it determines that the jury could not reasonably and legally reach a contrary conclusion. Krawczyk v. Stingle,208 Conn. 239, 244 (1988); Bound Brook Assn. v. Norwalk,198 Conn. 660, 67 (1986).
Standard for Setting Aside a Verdict
Pursuant to P.B. §§ 16-35 and 16-37, the trial court has the power to set aside a jury verdict that is contrary to law. Paigev. Saint Andrew's Roman Catholic Church Corp., 250 Conn. 14, 17
(1999); Labbe v. Pension Commission, 239 Conn. 168, 191-92
(1996); Salaman v. Waterbury, 44 Conn. App. 211, 214 (1997). Practice Book § 16-37 provides that where the court reserves decision on a motion for directed verdict, the judicial authority "may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed."
A trial court may set aside a verdict on a finding that, given the evidence presented, the jury mistakenly applied a legal CT Page 4593 principle or because there is no evidence to which the legal principles of the case could be applied. John T. Brady Co. v.Stamford, 220 Conn. 432, 441 (1991); Novak v. Scalesse,43 Conn. App. 94, 97-98 (1996); Maroun v. Tarro, 35 Conn. App. 391, 396, cert. denied, 231 Conn. 926 (1994).
The Standard for a Violation of the Right to Substantive Due Process
In ATC Partnership v. Windham, 251 Conn. 597, 608 (1999), the Connecticut Supreme Court identified the type of conduct under color of state law necessary to establish denial of substantive due process maintainable under 42 U.S.C. § 1983. The conclusion of the Supreme Court in ATC Partnership v. Windham is that overzealous or even ill-intentioned misuse of official power to affect a person's economic interests is not within the zone of protection of the due process clause of the constitution as it relates to substantive, rather than procedural rights. As the Court stated, "[d]espite the important role of substantive due process in securing our fundamental liberties, that guarantee `does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.'County of Sacramento v. Lewis, 523 U.S. [833,] 848 [(1998)]. Rather, substantive due process has been held to protect against only the most arbitrary and conscience shocking governmental intrusions into the personal realm that `our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society.'" (Internal quotation marks omitted.) ATC Partnership v.Windham, supra, 251 Conn. 606.
The ability of government to regulate business conduct is well-established. The plaintiff's claims against the movants relate to regulation of his business, and even hostility to his business, but not at all to invasions of his person or what the Connecticut Supreme Court denominated "the personal realm." The Court in ATC Partnership may properly be understood to be opining that the nature of disadvantages to business or economic interests is simply unlikely to meet the level so extreme that it shocks the conscience to the same degree as incursions on rights of personal integrity:
 Substantive due process is the embodiment of society's desire to prevent government from abusing [its] power, or employing it as an instrument of oppression. . . . Collins v. Harker Heights, 503 U.S. 115, 126 (1992). To that end, a claim of CT Page 4594 violation of substantive due process must allege a level of executive abuse of power . . . which shocks the conscience. County of Sacramento v. Lewis, [supra,] 523 U.S. 846. A salient example of such abuse of power may be found in the very case in which the standard was first enunciated. In Rochin v. California, [342 U.S. 165, 172 (1952)], the United States Supreme Court held that the forced pumping of a suspect's stomach to retrieve evidence shocked the conscience. As the Court described it, [i]llegally breaking into the privacy of a petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents — this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.
(Internal quotation marks omitted.) ATC Partnership v. Windham,251 Conn. 597, 608 (1999). The claim of violation of substantive due process made by the plaintiff in ATC Partnership v. Windham was a claim of bad faith negotiations over the value of land to be condemned by the Town, coercive conduct including the imposition of a baseless lien, and restraint of a landowner from gaining access to its own property. The Court ruled that "[i]n our view, the type of economic harm alleged in the plaintiff's complaint fails to rise to the conscience-shocking level that the United States Supreme Court has set as a standard for violation of substantive due process."ATC Partnership v. Windham, supra, 251 Conn. 609. The Court emphasized that a finding of official conduct that was "shocking to the conscience applied to actions taken against the person of a citizen, not harm to his economic interests. Id., 606.
The Supreme Court found that the claim of substantive due process had properly been disposed of in that case by the granting of a motion to strike, since the economic hardship and disruption of access to property that were at issue were, as a matter of law, not the sort of governmental action that met the standard of the kinds of personal invasions that `shock the conscience.'"
Though the federal courts have not explicitly dichotomized personal and economic interests in discussing the standard for a claim of violation of substantive due process rights, the United CT Page 4595 States Supreme Court has stated that "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272, rehearing denied, (1994). The federal court of appeals for the Ninth Circuit has observed that "[t]hese fields likely represent the outer boundaries of substantive due process protection."Nunez v. City of Los Angeles, 147 F.3 867, 871, n. 4 (9th Cir. 1998), citing Collins v. City of HarkerHeights, 503 U.S. 115, 125 (1992).
Disposition as a Matter of Law
The Connecticut Supreme Court has noted that its review of rulings on motions to direct or set aside a verdict implicates "the litigants' constitutional right to have issues of fact
determined by a jury where there is room for a reasonable difference of opinion among fair-minded jurors. (Emphasis supplied.) Labbe v. Pension Commission, supra, 239 Conn. 192. The issue raised in the motions before this court concerns the legal standard applicable to a claim of substantive due process, not factual determinations concerning whether conduct occurred. The Supreme Court gave effect to this difference when it found that the trial court in ATC Partnership v. Windham had appropriately assessed the legal sufficiency of the plaintiff's claim of denial of substantive due process in a ruling upon a motion to strike, obviously without any findings of fact by a trier of fact. The Court notably did not find it necessary to allow a jury to determine whether the evidence shocked its conscience, but rather analyzed the claimed conduct and determined as a matter of law that it did not constitute conduct at the level of invasiveness of personal rights that is shocking to the conscience.
The issue, therefore, is whether the actions of defendants Darrow and Russell were the type of invasion of rights of personal and bodily integrity that as a matter of law is "shocking to the conscience" within the legal standard announced by the Connecticut Supreme Court in ATC Partnership v. Windham
and by federal court rulings defining that standard.
Evidence of the actions of defendants Darrow and Russell
It was undisputed at trial that both defendant Russell, as the fire chief of the Town of Fairfield, and defendant Darrow, as the town's fire marshal, had a duty to enforce fire safety CT Page 4596 regulations, including regulations concerning the authorized occupancy of places of public accommodation in order to avoid the risk of disasters in the event of fire. The plaintiff did not dispute that fire officials can, without violating substantive due process rights, perform the inspections reasonably necessary to determine if a violation is occurring and to cause a violator to comply with the authorized occupancy limit. The plaintiff's claim was that these defendants engaged in activities that disrupted his business and were undertaken for the purpose of causing his business to fail.
Because claims brought under 42 U.S.C. § 1983 are actions against individuals acting under color of state law, not claims against the governmental entities that employ them, the conduct at issue is the conduct of the individual defendants, not the conduct of others acting on behalf of the municipal government. The liability of persons sued in their individual capacities under § 1983 must be gauged in terms of their own actions. Malleyv. Briggs, 475 U.S. 335, 341 (1986); Rogan v. Menino,175 F.3d 75, 77 (1st Cir. 1999), cert. denied, 120 S.Ct. 616 (2000).
The proof adduced by the plaintiff included no claim of any intrusion by defendants Darrow or Russell of his person. He was not touched by either defendant. He was not arrested or detained. Though the allegations of his complaint broadly allege harassment and intimidation, the proof actually adduced, construed in the manner most favorable to the plaintiff, was that both of these defendants came into his bar on numerous occasions and spoke to him about limits on occupancy under the fire code, and that when the fire department received complaints, even anonymous complaints, these defendants went to the bar in fire trucks or other official vehicles and conducted head counts, turning on the lights in the bar and moving among the patrons to count them, in a process that would sometimes take many minutes because of the difficulty of counting people in a milling crowd. The plaintiff presented testimony to the effect that these inspections caused patrons to disfavor his establishment.
Plaintiff Levine testified that on one or possibly two occasions when he came to the bar, defendant Russell stated, "I don't get mad, I get even." (Transcript of Testimony of Steven Levine, p. 105 ("Levine Tr.")) Plaintiff Levine did not testify that he was ever subjected to any physical contact nor threatened with any harm to his person. He testified that defendant Russell came to the bar during the day "every couple of months" in its CT Page 4597 first year of operation. (Levine Tr. 24.) He did not stay "very long. He'd walk around, look around, smile, and leave." (Levine Tr. 24.) In later years, defendant Russell inspected the bar on two occasions, each time looking around for a few minutes. (Levine Tr. 72-73.) On one occasion he "started talking about (the plaintiff's) lawyer" but issued no citations or abatement orders after his inspections. (Levine Tr. 73.) Defendant Russell "drove by on a regular basis" and sometimes parked across the street watching the bar. (Levine Tr. 91, 104.)
To buttress the claim of ill will, the plaintiff presented evidence that defendant Russell had not wanted firefighters to play on a softball team sponsored by the plaintiff, nor to wear tee shirts advertising the plaintiff's bar during the fire department's physical training programs
The plaintiff's proof with regard to the actions of defendant Darrow, the fire marshal at the time, was that when the bar was being renovated and readied for business, defendant Darrow stopped by often to discuss occupancy and to indicate that he would be watching the business, that he inspected the premises on several occasions, that he had accused the plaintiff of having an unsafe exit (Levine Tr. P. 52), and that he had asked a police officer to arrest Levine, but that the officer refused to do so, whereupon defendant Darrow became flushed and said he would put the plaintiff out of business. (Id.) On other occasions, defendant Darrow stood outside while other fire officials did head counts to determine whether the bar was exceeding its authorized occupancy. (Levine Tr. 92)
Town fire marshals are required to set occupancy limits for places of public assembly and to enforce those limits. Documents recording some inspections indicate that the bar was found at times to be over its authorized occupancy, and its operations were suspended until enough patrons left to bring the occupancy within the authorized limit. On many evenings, there was a line of people waiting to get in when other patrons left, prompting neighbors who disliked the establishment in their midst to suspect overcrowding and to make reports of overcrowding to the fire department.
Failure to meet the legal standard
Like the plaintiff in ATC Partnership v. Windham, plaintiff Levine had an emotional reaction to the officials' actions and CT Page 4598 the damage to his economic interests; however, he presented no evidence of any action taken by either defendant Darrow or defendant Russell to intrude on his bodily integrity or expose him to harm to his person. He characterized the constitutional right at issue as a right to pursue the common occupations of life. (Substituted Complaint, Count One, at paragraph 7.) In rulings on claims of violation of substantive due process since the Supreme Court's ruling in City of Sacramento, the federal courts have observed that "[t]he basic due process constraint, where substance and not procedure is involved, is against behavior so extreme as to `shock the conscience.' County ofSacramento v. Lewis, supra, 523 U.S. 833 . . . ; Rochin v. Peopleof California, 342 U.S. 165, 172 (1952). Outside of a few narrow categories, like the safeguarding of prisoners who have been wholly disabled from self protection, this means conduct that is truly outrageous, uncivilized, and intolerable." Hasenfus v.Lajeunesse, 175 F.3d 68, 72 (1st Cir. 1999).
The United States Supreme Court has recognized a cause of action for deprivation of substantive due process of law only in instances in which personal rights, such as the right of bodily integrity or the integrity of family life, are at issue; or, to put it another way, the Court has found that the government conduct at issue "shocks the conscience" only when it invades intimate personal concerns. In Rochin v. California, supra, the conduct at issue was forcible stomach pumping. In Loving v.Virginia, 388 U.S. 1, 12 (1967), it was marriage; in Griswold v.Connecticut, 381 U.S. 479, 481-82 (1965), it was contraception; in Meyer v. Nebraska, 262 U.S. 390, 399-403 (1923), it was choices over educating one's children. Exposing citizens to physical risk and harm during an attempt to capture a criminal was held not to be governmental conduct that "shocks the conscience" in County of Sacramento v. Lewis, 523 U.S. 833, 846
(1998). No conduct by government officials directly solely to the operation of a business or economic activity has been held by the Supreme Court to meet the standard of "shocking the conscience."
The Connecticut Supreme Court ruled in ATC Partnership v.Windham, supra, 251 Conn. 606, that the allegedly intentionally punitive, bad faith conduct of the defendants in seizing and condemning the plaintiff's property, "fall[s] far short of meeting [the] exacting standard" of "shocking the conscience" and "egregiously transcend[ing] the decencies of civilized conduct." The plaintiff in ATC Partnership v. Windham, supra, alleged that the defendant officials had, after failing to reach agreement on CT Page 4599 a price for a piece of property, ordered the plaintiff to accept its figure or face condemnation, groundlessly issued a tax warrant on personal property, and prevented the plaintiff from gaining access to the premises or to its personal property. These allegations of bad faith exercise of powers and restraint of economic endeavors are closely analogous to the complaints in this case. The Supreme Court ruled that these actions did not, as a matter of law, constitute conduct shocking to the conscience that so violated personal interests as to be cognizable as a deprivation of the right to substantive due process of law.
In the case before this court, the plaintiff has satisfied the requirement of showing that the defendants engaged in intentional conduct, but like the plaintiff in ATC Partnership, he has not established that the conduct in which, they engaged was, as a matter of law, "shocking to the conscience."
Had the decision in ATC Partnership v. Windham, supra, been available to this court at the time of the motion for a directed verdict, that portion of that motion relating to Count One of the Substituted Complaint would, like the portion directed to Count Two, have been granted immediately. The Connecticut Supreme Court's ruling in that case, as well as the federal case law cited above, signals that the verdict of the jury must be set aside as contrary to law and that judgment should enter in accordance with the granting at this time of the motion for directed verdict.
Conclusion
The verdict is set aside, the motion for directed verdict is granted, and judgment shall enter in favor of defendants Clarence Darrow and David Russell on all counts of the plaintiff's complaint.
 Beverly J. Hodgson Judge of the Superior Court